Filed in Open Court
08/21/2025
Skyler B. O'Hara
By M. Ganett
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 2:24-cr-20069-DDC

DAVID INGRAM,

Defendant.

# PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney Ryan J. Huschka, and David Ingram, the defendant, personally and by and through his counsel, J. Justin Johnston, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1.  **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 4 of the Indictment charging a violation of 18 U.S.C. § 1343, that is, wire fraud. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 4 of the Indictment to which he has agreed to plead guilty is not more than twenty years of imprisonment, a $250,000 fine, three years of supervised release, restitution in the amount of at least $5,779,313.77 and a $100.00 mandatory special assessment. The defendant further agrees to the imposition of a personal money judgment.

2.  **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

The defendant, founder and managing member of AltosGroups, LLC, defrauded several real estate developers in the United States by inducing them to enter agreements whereby the

Ver. 03-01-24

AltosGroups would provide funding for construction projects. The defendant stole millions of dollars in initial deposits that were made by developers and either misappropriated or diverted the deposits to other accounts controlled by him or his wife.

Starting by at least 2019, the defendant and AltosGroups entered into various loan agreements with real estate developer victims for the purpose of providing funding for construction projects. The defendant represented that he had warehouse lines of credit with major U.S. financial institutions, such as JPMorgan Chase Bank and Bank of America. As part of the agreements, the defendant required that the victims make "deposits," which he represented would trigger his line of credit. The deposits were supposed to be placed in a dedicated account and would then be used for each respective construction project. In reality, however, the defendant had no warehouse lending relationship with JPMorgan Chase or Bank of America and the deposits were not kept in a dedicated account, but rather used for the defendant and his wife's personal expenses, other business purposes, or transferred to other accounts controlled by the defendant or his wife. After the defendant received the initial deposits from the victims, he failed to fund the loans and did not return the deposits to the victims. In the rare instance in which AltosGroups provided any initial funding for a victim's project, it came, at least in part, from deposits made by another victim.

### Ohio Assisted Living Facility Project

In September 2019, the defendant and AltosGroups induced victims to enter into an agreement in which the Targets were supposed to provide a construction loan of $11,668,785 to build an assisted living facility in Ohio. The defendant told the victims he had a line of credit with JPMorgan Chase to fund their project. The defendant effectively took $327,641.77 from victims in connection with this transaction, which had been transferred by the victims to JPMC account 7392 in the name of Altosgroups, LLC (for which his wife was the sole signer) when the loan closed on November 25, 2019. The defendant failed to fund the loan and did not return the deposits to the victims.

### Hard Rock Kansas (Edwardsville)

In July 2019, the defendant induced victims to enter into an agreement in which AltosGroups was supposed to provide a construction loan of $48,823,603 to build a Hard Rock Hotel and Casino in Edwardsville, Kansas. At various points throughout 2019, the defendant represented he had lines of credit with JPMorgan Chase and Bank of America. On November 13, 2019, the victims sent a down payment deposit of $3,000,674 to a JPMorgan Chase account in the name of AltosGroups LLC ending in number 2995 (both the defendant and his wife were signers on this account). Less than two weeks later, on November 26, 2019, AltosGroups JPMC account 2995 transferred $3,000,000 to AltosGroups JPMC account 7392 in the name of AltosGroups, LLC (for which the defendant's wife was the sole signer). The same day, JPMC account 7392 wired $3,000,000 to a Banco Ve Por Mas account, a Mexican financial institution. AltosGroups failed to fund the loan and did not return the deposit to the victims.

### Hyatt Kansas City

In October 2019, AltosGroups and the defendant induced victims to enter into an agreement in which AltosGroups was supposed to provide a construction loan of $24,148,387 to build a Hyatt House hotel in Kansas City, Missouri. On October 3, 2019, the victims sent down payment deposits totaling $927,027 to a Bank of America account in the name of Altosgroups, LLC (ending in 1655), which was supposed to be held in escrow. By the end of October 2019, the majority of the funds in AltosGroups BofA Account 1655 had been wired to other financial institutions or transferred to other AltosGroups accounts at Bank of America. AltosGroups failed to fund loan and did not return the deposits to the victims.

### Springhill Suites Utah Victims

In January 2020, AltosGroups and the defendant induced victims to enter into an agreement in which AltosGroups was supposed to provide a construction loan of $9 million to build a SpringHill Suites hotel in Utah. On December 31, 2019, the victims sent $1,523,971 as a down payment deposit to a JPMC account 7392, which was supposed to be held in escrow. Between January and March 2020, A&B Kanab's down payment deposit was commingled with other funds in AltosGroups JPMC Account 7392. The account was drawn down to less than $100,000 by the end of February 2020, including more than $100,000 in AltosGroups "salary" payments that were transferred to AltosGroups BofA Account 1655. None of these disbursements were authorized by A&B Kanab. AltosGroups failed to fund loan and did not return the deposits to the victims.

On March 6, 2020, the defendant sent a letter to all of the above victims saying he would not be able to provide financing for their respective projects. Notwithstanding that their deposits had been depleted, he indicated that their deposits were available for return. But he did not return them when the victims requested.

Bank of America and JPMorgan Chase confirmed that the defendant did not, in fact, have any line of credit or even lending relationship with those banks, let alone a "warehouse" line of credit sufficient to fund large-scale construction projects.

The total loss related to these four victims is at least $5,779,313.77.

3. **Application of the Sentencing Guidelines.** The parties understand that the Court will apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and may impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable

evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4.  **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5.  **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

    (a) to dismiss the remaining counts of the Indictment at the time of sentencing;

    (b) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment;

    (c) to recommend that the defendant not receive a 2-level upward adjustment for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C);

    (d) to recommend that the defendant not receive an upward adjustment for aggravating role, pursuant to U.S.S.G. § 3B1.1;

    (e) to recommend that the defendant's sentence run concurrent to any sentence imposed in the proceedings in *United States v. Ingram*, 6:24-cr-172 (M.D. Fla.);

    (f) to recommend a sentence at the low end of the applicable Guideline range, and to allow the defendant to reserve the right to request a downward departure and/or a variance; and

    (g) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for

4

acceptance of responsibility because he timely notified the government of his intention to enter a plea of guilty.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence he will receive.

7. **Forfeiture of Assets.** The defendant agrees to the imposition of a forfeiture judgment against him in the amount of $5,779,313.77, which sum represents proceeds the defendant obtained from Count 4 and relevant conduct. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the imposition of a forfeiture judgment and withdraws any administrative claim or petition for remission regarding the property identified in this paragraph. The defendant acknowledges and agrees that the imposition of a forfeiture judgment shall not be deemed an alteration of his sentence or this agreement and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Final Order of Forfeiture and agrees to sign any and all documents necessary to effectuate the abandonment and transfer of his interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

8. **Restitution.** The defendant knowingly and voluntarily agrees and consents to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) for all losses caused by defendant's relevant conduct in this case, not just losses resulting from the counts of conviction, in *at least* the following amounts, less any amounts already disbursed to the victims in bankruptcy proceedings initiated by the defendant:

| Victim: | Total Loss: | Agreed Restitution: |
|---|---|---|
| Maumee Point, LLC | $327,641.77 | $327,641.77 |
| One10 Hotel HRKC LLC | $3,000,674 | $3,000,674 |

| | | |
|---|---|---|
| 900 Broadway KC Development Company LLC | $927,027 | $927,027 |
| A&B Kanab Hotels LLC | $1,523,971 | $1,523,971 |

(a) The victims and amounts shown in the above table reflect all currently identified victims and the minimum of known loss amounts for purposes of restitution. Additional loss amounts may be presented to the Court for purposes of determining restitution. The defendant reserves his right to dispute any additional losses beyond those identified in the chart above. In the event additional victims and/or losses are discovered after execution of this Plea Agreement but before sentencing, defendant agrees to pay restitution to the additional victims and/or in the additional amounts for all losses caused by defendant's relevant conduct in this case, and not only for the offense of conviction, pursuant to 18 U.S.C. § 3663(a)(3) and/or 18 U.S.C. § 3663A(a)(3).

(b) Irrespective of any payments by other defendants that are ordered to be jointly and severally liable for restitution, defendant understands he is liable for the full amount of restitution ordered until defendant has paid that amount in full or the victim's loss is repaid in full, whichever occurs first.

(c) Defendant acknowledges that the liability to pay restitution does not terminate until 20 years from entry of judgment or 20 years after defendant's release from imprisonment, whichever is later pursuant to 18 U.S.C. § 3613(b).

9. **Identification of Assets and Agreement Concerning Monetary Penalties.** In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, defendant agrees as follows:

(a) Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to defendant. Payments made prior to sentencing can be sent to the following address and should reference defendant's name and case number:

> Clerk, U.S. District Court
> 401 N. Market, Room 204
> Wichita, Kansas 67202

(b) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

7

(c)   Within 30 days of any request by the United States Attorney's Office, defendant agrees to execute a financial statement and provide supporting documentation. Defendant expressly authorizes the United States to obtain a credit report before sentencing. Further, defendant agrees to execute authorizations for the release of all financial information requested by the United States.

(d)   Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e)   Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f)   Defendant agrees that all information defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all information defendant provides to the United States Attorney's Office or independently obtained by the United States Attorney's Office in the course of its financial investigation of defendant may be provided to the United States Probation Office.

(g)   All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h)   Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i)   Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j)   If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k)   Defendant understands he has an obligation to notify the court and the United States Attorney's Office of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

(l)   Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 5, above.

10. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

11. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

12. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including assessments and restitution, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs or varies upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §

3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

13.     **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

14.     **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

15.     **Parties to the Agreement.** The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

16. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

/s/ Ryan J. Huschka  
Ryan J. Huschka  
Assistant United States Attorney  

Date: 3/4/2025

/s/ D. Christopher Oakley  
D. Christoper Oakley  
Assistant United States Attorney  
Supervisor  

Date: 3/4/2025

David Ingram  
Defendant  

Date: 8/21/25

J. Justin Johnston  
Counsel for defendant  

Date: 8/21/25

11